**CITY OF ZANESVILLE, Appellee,**

v.

**OSBORNE, Appellant.**

[Cite as *Zanesville v. Osborne* (1992), 73 Ohio App.3d 580.]

Court of Appeals of Ohio,
Muskingum County.

No. CA 91–32.

Decided Feb. 26, 1992.

*Michael Northrup,* Assistant Law Director, for appellee.

*Robert L. McCarty,* for appellant.

MILLIGAN, Judge.

The Zanesville Municipal Court convicted appellant Jeffery Osborne of public indecency (Zanesville Ordinance 533.07), following a no contest plea. Osborne appeals the conviction and raises four assignments of error.

### Assignment of Error No. I

"Trial court failed to make findings of facts on the issues in this case as required by rule of criminal procedure, Rule 12E."

### Assignment of Error No. II

"Trial court erred in failing to quash the affidavit herein, and in failing to find that Officer Doss had no authority to arrest Osborne without a warrant since he lacked probable cause to believe Osborne had committed any offense."

### Assignment of Error No. III

"The testimony and identification of Bobbi Braggs and Cynni Kitts were the fruits of the illegal arrest of Osborne and should have been suppressed."

### Assignment of Error No. IV

"The identification method of defendant by Braggs and Kitts was unfair and suggestive; and it was the product of undue influence by Officer Doss; it denied defendant due process of law."

On March 21, 1991, two women were shopping at JoAnn Fabrics at the Colony Square Mall in Zanesville. They noticed appellant following and

watching them. The women saw appellant masturbating behind a rack of merchandise. When appellant realized that the women saw what he was doing, he left the store.

The women told the store manager what had occurred. The manager called the police. The two women gave the police a description of the suspect; this description was put on the police radio.

Detective Doss of the Zanesville Police Department responded to the radio dispatch. He spotted appellant in the mall parking lot, as appellant matched the description given over the radio.

Detective Doss approached appellant and told him that he was under investigation for exposing himself, and that some people were going to come to look at him. Appellant cooperated.

Patrolman Davis of the Zanesville Police Department drove the two women and the manager of the store to appellant's location in the parking lot.

The two women identified appellant as the man they saw masturbating in the store. After they identified him, appellant was placed under arrest for indecent exposure.

Appellant moved to suppress evidence. The motion had four branches: (1) to quash the affidavit, as appellant was illegally arrested without a warrant; (2) to suppress any evidence obtained by the city as fruits of an illegal arrest; (3) to suppress any statements made by appellant, as he was not given *Miranda* warnings; and (4) to suppress identification testimony as the result of improper influence and suggestion. Branch three of the motion was sustained, the others were overruled. Appellant pled no contest, and was convicted.

## I

After the court overruled appellant's suppression motion, appellant requested findings of fact pursuant to Crim.R. 12(E). He asked for findings as to when he was arrested, what factual basis provided probable cause, and "from whence such factual basis emanated, to whom."

The court found in writing that appellant was arrested when he was in custody and was told that he was under arrest. The factual basis providing probable cause was the eyewitness observation of appellant's conduct in JoAnn Fabrics, and the subsequent identification of appellant as the person they saw masturbating.

Appellant then requested further findings as to who, when, where, and why he was taken into custody. This further finding was not provided by the court.

■ It is reversible error for the trial court to fail to state its essential findings of fact on the record, upon timely request, when it overrules a motion to suppress. *State v. Almalik* (1986), 31 Ohio App.3d 33, 31 OBR 48, 507 N.E.2d 1168, syllabus. The trial court complied with appellant's initial request for findings. The court was under no obligation to continue to supply findings for an indefinite period of time. The court already answered the question of when appellant was under arrest; his answer was further clarified by his finding that the identification of the women provided probable cause for the warrantless arrest.

■ Even if the trial court's findings are inadequate, such error is not prejudicial where the record provides an appellate court with a sufficient basis to review the assignments of error. *Parma v. Reschke* (Feb. 14, 1991), Cuyahoga App. No. 58015, unreported, 1991 WL 19151. We have the benefit of the transcript of the suppression hearing, upon which the court based its factual findings. Appellant is not prejudiced by the failure to provide further findings of fact, and we are able to review the case on the merits.

The first assignment of error is overruled.

## II

■ Even if the trial court had found that appellant was arrested without probable cause, an illegal arrest does not, in itself, invalidate an affidavit filed in a misdemeanor case and is not a proper basis to sustain a motion to quash an affidavit. *State v. Hooper* (1966), 10 Ohio App.2d 229, 39 O.O.2d 435, 227 N.E.2d 414, certiorari denied (1967), 389 U.S. 928, 88 S.Ct. 292, 19 L.Ed.2d 281.

The second assignment of error is overruled.

## III

■ Appellant argues that he had been illegally arrested without probable cause before the women identified him in the parking lot; therefore, the identification testimony should have been suppressed as a fruit of the illegal arrest.

In *Davis v. Mississippi* (1969), 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676, the United States Supreme Court held that the Fourth Amendment does apply to the investigatory stage of the prosecution. The court did not answer the question of whether the police must have probable cause to believe the suspect committed a crime before detaining him to obtain fingerprints, as the police in *Davis* made no effort to comply with the Fourth Amendment.

The Ohio Supreme Court, citing a line of United States Supreme Court cases beginning with *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889,

held that limited intrusions into privacy are reconcilable with the Fourth Amendment on less than probable cause to arrest if: (1) the officer has an articulable and specific basis for suspecting criminal activity; (2) the intrusion is limited in scope, purpose, and duration; (3) the intrusion is justified by substantial law enforcement interests; and (4) there is an opportunity at some point to subject the intrusion to the scrutiny of a neutral, detached judicial officer, before any evidence obtained is admitted in a criminal proceeding. *In re Order Requiring Fingerprinting of a Juvenile* (1989), 42 Ohio St.3d 124, 537 N.E.2d 1286, certiorari denied, 493 U.S. 857, 110 S.Ct. 165, 107 L.Ed.2d 122.

In the case *sub judice,* all the above requirements were met:

(1) *Articulable basis for suspicion.* Detective Doss had received a report over his radio with a description of the suspect. He saw appellant in the parking lot of the mall where the offense occurred, and appellant matched the description.

(2) *Limited Intrusion.* Detective Doss asked appellant if he would stay in the parking lot to allow the women to look at him. The women were still in the store when Doss radioed to Patrolman Davis that he had a suspect in the lot. Appellant was held only for the short amount of time it took the officer to ask the women to go with him in the cruiser, drive to the spot in the parking lot, and allow the women to identify appellant.

(3) *Law enforcement interests.* The police had a substantial interest in having the women look at the suspect as soon as possible, to either confirm their suspicion or eliminate appellant from further investigation. As all parties involved were still at the shopping mall, the limited intrusion was justified by the interest in obtaining an identification while the women had a fresh recollection of the offender's appearance, and while he was still wearing the same clothes.

(4) *Judicial scrutiny.* Appellant had an opportunity to subject the constitutionality of the intrusion to the scrutiny of the trial court at the suppression hearing.

The detention for identification was justified under the Fourth Amendment according to *Terry, supra,* and its progeny. Appellant was not under arrest until after the identification, at which time the officer had probable cause.

The third assignment of error is overruled.

## IV

Appellant argues that the identification was impermissibly suggestive and violated due process, as Doss said to the women three times, "This is the

man, isn't it?" All witnesses except appellant testified that Doss did not make this comment. Rather, he asked the women if they recognized the man, and when they said "yes," he asked them if they were sure about the identification. It is not the role of the appellate court to judge the credibility of witnesses.

■ Appellant further argues that he did not have counsel at the identification. A suspect has no absolute right to counsel at a pre-indictment show-up. *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.

■ Lastly, he argues that the show-up was impermissibly suggestive as he was the only person shown to the women. While the practice of showing suspects singly to witnesses for identification is widely condemned, whether such procedure violates due process depends on the totality of the surrounding circumstances. *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (no due process violation where suspect taken to hospital for identification by assault victim, where suspect was handcuffed to seven law enforcement officers).

■ In determining if an identification should be suppressed as impermissibly suggestive, reliability is the linchpin. *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140. Factors to be considered include: (1) the witnesses' opportunity to view the suspect during the crime; (2) the witnesses' degree of attention during the crime; (3) the accuracy of the witnesses' prior description; (4) the level of certainty at the confrontation; and (5) the time lapsed between the crime and the confrontation. *Id.*

■ Applying these factors to the case *sub judice,* the identification was not so impermissibly suggestive as to bar its admission at trial:

(1) *Opportunity to view suspect.* The women watched the appellant in the store for five to ten minutes before they saw him masturbating, as they noticed he seemed to be watching and following them. The crime occurred in a lighted store around 11:30 a.m.; therefore the witnesses had an opportunity to look at appellant.

(2) *Degree of attention.* The women paid attention to the man before the incident, as they noticed he seemed to be watching and following them.

(3) *Accuracy of description.* The women described the offender as a white male with dark hair, stocky build, wearing blue jeans with a hole in the back below the knee, and wearing a white and yellow baseball cap. This description matched appellant when spotted in the parking lot.

(4) *Level of certainty.* One of the women was certain appellant was the offender when she first saw him at the confrontation. The second woman

was unsure at first, but was sure he was the offender when he turned so that she could see his face.

(5) *Time lapsed.* A short time elapsed between the crime and the confrontation, approximately one-half hour.

In addition, both women were able to identify appellant in court, independent of their identification at the confrontation. The identification procedure did not violate due process.

The fourth assignment of error is overruled.

The judgment of the Zanesville Municipal Court is affirmed.

*Judgment affirmed.*

PUTMAN, P.J., and GWIN, J., concur.